1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE EASTERN DISTRICT OF CALIFORNIA

8   JOSEPH G. ALCALA,

9              Plaintiff,              No. 2:09-cv-3407 FCD JFM (PC)

10        vs.

11  MIKE MARTEL, Warden, *et al.*,        ORDER AND

12             Defendants.               FINDINGS & RECOMMENDATIONS

13  _____/

14         Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

15  42 U.S.C. § 1983.  Before the court is defendants' motion to dismiss.  Plaintiff opposes the

16  motion.  Also before the court is defendants' motion to modify the March 16, 2011 scheduling

17  order.

18                      ALLEGATIONS OF THE COMPLAINT

19         This action is proceeding on plaintiff's June 22, 2010 second amended complaint

20  ("SAC").  In this court's October 27, 2010 screening order, the SAC was found to assert an

21  Eighth Amendment claim for deliberate indifference to medical needs against defendants Dr.

22  Naseer, Nurse Palomino and Correctional Officer Carillo.[1]  At all times relevant to this action,

23  plaintiff was housed at Mule Creek State Prison ("MCSP") in Ione, California.

24  _____

25         [1] Given the allegations of the second amended complaint, the Clerk of the Court will be
    directed to send a copy of plaintiff's complaint to the Receiver in <u>Plata v. Schwarzenegger</u>, No.
26  C01-1351 TEH (N.D. Cal.).

                                    1

1    Plaintiff alleges that on or about May 2008, he began to feel sick and nauseous,

2   and later discovered an egg-sized lump on the left side of his abdomen.  SAC at 7.  Plaintiff

3   immediately submitted a medical request form to see Dr. Naseer.  Id.  On May 19, 2008, plaintiff

4   was seen by Dr. Naseer and Nurse Palomino, both of whom felt the lump on plaintiff's abdomen.

5   Id.  Plaintiff was placed on an unidentified waiting list and scheduled for a CAT scan.  Id.

6    Following this visit and prior to the CAT scan, plaintiff felt a second lump on the

7   right side of his abdomen and began to suffer from severe bloating, nausea, constipation, loss of

8   appetite, loss of weight and extreme pain and discomfort.  SAC at 7.  Plaintiff submitted multiple

9   medical request forms to see Dr. Naseer again, but was only able to see Nurse Palomino who, on

10   June 12, 2008, gave plaintiff Tylenol for pain management.  Id. at 7-8.

11    On June 13, 2008, plaintiff went "man-down" in his cell.  SAC at 8.  Plaintiff was

12   immediately taken to the prison clinic where he was seen by Dr. Hawkins, who, upon

13   examination, ordered plaintiff transferred to San Joaquin General Hospital for further medical

14   care and treatment.  Id.  After receiving several x-rays and a CAT scan at San Joaquin General

15   Hospital, plaintiff was returned to MCSP on June 15, 2008.  Id.  On June 17, 2008, plaintiff was

16   summoned to the prison clinic and seen by Nurse Palomino, who placed plaintiff an another

17   unidentified waiting list and scheduled him for a biopsy.  Id.  Nurse Palomino again gave

18   plaintiff Tylenol for pain management.  Id.

19    Despite repeated pleas for assistance with his array of symptoms and pain,

20   plaintiff claims that medical staff, including Nurse Palomino, informed plaintiff that they could

21   do nothing for him and suggested he fill out additional medical request forms.  SAC at 9.

22    On June 30, 2008, plaintiff again went "man-down" in his cell and a "code one"

23   medical emergency was called.  SAC at 9.  Carillo, the correctional officer on duty, arrived at

24   plaintiff's cell and stated "Let me see, what's wrong with you?," "There's nothing wrong with

25   you," "Come on," "Get up," and "I know you're only faking."  Id.  When medical staff arrived at

26   plaintiff's cell, Carillo insisted there was nothing wrong with plaintiff.  Id.  Although the medical

1  staff brought a stretcher to carry plaintiff from his cell, Carillo prevented them from doing so.

2  Id.  Thus, plaintiff was forced to walk to the prison clinic, where he sat for approximately 2-3

3  hours before being sent to the prison's main infirmary.  Id.

4          At the infirmary, plaintiff was seen by a doctor who gave plaintiff two shots of

5  morphine and made arrangements for plaintiff's immediate transfer to San Joaquin General

6  Hospital.  SAC at 8-9.  Plaintiff remained in the hospital from June 30, 2008 to July 2, 2008.

7  Id. at 10.  While there and after a series of medical tests, plaintiff was informed that he had

8  cancer.  Id.

9          Upon his return to MCSP and due to a lack of available beds at the prison's

10  infirmary, plaintiff was placed in Administrative Segregation from July 3, 2008 to July 11, 2008.

11  SAC at 10-11.  On July 11, 2008, plaintiff went "man-down" in his cell for a third time and was

12  transported to the San Joaquin General Hospital.  Id. at 11.  Plaintiff remained in the hospital for

13  approximately ten days where he was diagnosed with stage 4 lymphoma cancer.  Id.  Plaintiff

14  was told that, without further emergency medical care, the cancer would have proven fatal.  Id.

15  Plaintiff received his first chemotherapy treatment on July 19, 2008 at the San Joaquin General

16  Hospital.  Id.

PROCEDURAL BACKGROUND

18          Plaintiff initiated this action on December 8, 2009 as a petition for writ of habeas

19  corpus.  See Doc. No. 1.  Plaintiff's petition was comprised of two claims: the instant claim and

20  a challenge to a disciplinary conviction and subsequent loss of good-time credits.  Because the

21  first claim concerned his conditions of confinement and the second claim concerned the fact or

22  duration of his confinement, the court converted the petition to a civil rights action, and plaintiff

23  was ordered to bring his challenge to the disciplinary conviction in a separate action pursuant to

24  28 U.S.C. § 2254.  See Doc. No. 10; Related Case 2:10-cv-3448-JFM.

25          On February 28, 2011, defendants filed an answer.  On March 16, 2011, a

26  discovery and scheduling order issued.  On April 13, 2011, defendants filed a motion to dismiss.

1  On April 25, 2011, plaintiff filed an opposition.  On April 28, 2011, defendants filed a reply.  On

2  May 10, 2011, plaintiff filed a sur-reply.

3          On June 2, 2011, defendants filed a motion to modify the scheduling order.  On

4  June 17, 2011, plaintiff filed a statement of non-opposition to this motion.

5                          STANDARDS FOR A MOTION TO DISMISS

6          Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to

7  dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

8  In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as

9  true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197

10  (2007), and construe the pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes,

11  416 U.S. 232, 236 (1974).  In order to survive dismissal for failure to state a claim a complaint

12  must contain more than "a formulaic recitation of the elements of a cause of action;" it must

13  contain factual allegations sufficient "to raise a right to relief above the speculative level."  Bell

14  Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007).  However, "[s]pecific facts are not

15  necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim

16  is and the grounds upon which it rests.'"  Erickson, 551 U.S. 89, 127 S.Ct. at 2200 (quoting Bell

17  Atlantic at 554, in turn quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

18          On November 30, 2010, plaintiff received the notice required by Wyatt v.

19  Terhune, 305 F.3d 1033 (9th Cir.2002), for opposing a motion to dismiss for failure to exhaust

20  administrative remedies pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

21                                  DISCUSSION

22  1.      Defendants' Motion to Dismiss

23          In their motion to dismiss, defendants seek dismissal of plaintiff's SAC on the

24  ground that plaintiff did not proceed to the Director's Level of Review with his administrative

25  grievance and, thus, did not exhaust his administrative remedies.

26  /////

4

"Section 1997e(a) of Title 42 of the United States Code provides:

No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This exhaustion requirement is mandatory.  Booth v. Churner, 532 U.S. 731, 741 (2001)."

McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. Dec. 5, 2002).  Exhaustion must precede the filing of the complaint; compliance with the statute is not achieved by satisfying the exhaustion requirement during the course of an action.  Id. at 1200.  Claims dismissed for failure to exhaust administrative remedies should be dismissed without prejudice.  Id.

In Jones v. Bock, 549 U.S. 199, 218 (2007), the United States Supreme Court held "that a prison's own grievance process, not [42 U.S.C. § 1997e(a)], determines how detailed a grievance must be to satisfy" the statutory requirement.  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  In Griffin, the Ninth Circuit held that "when a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"  Id. at 1120 (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)).  "The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."  Id.

California's Department of Corrections provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment. Within fifteen working days of "the event or decision being appealed," the inmate must ordinarily file an "informal" appeal, through which "the appellant and staff involved in the action or decision attempt to resolve the grievance informally." Cal. Code Regs., tit. 15, §§ 3084.5(a), 3084.6(c). [Footnote omitted.] If the issue is not resolved during the informal appeal, the grievant next proceeds to the first formal appeal level, usually conducted by the prison's Appeals Coordinator. Id. §§ 3084.5(b), 3084.6(c). Next are the second level, providing review by the institution's head or a regional parole administrator, and the third level, in which review is conducted by a designee of the Director of the Department of Corrections. [Footnote omitted.] Id. § 3084.5(e)(1)-(2).

Brown v. Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005).  Department regulations provide that the "informal level is waived for a variety of grievances, including those concerning 'alleged

/////

1  misconduct by a departmental peace officer.'  Cal. Code Regs. tit. 15, § 3084.5(a)(3)(G)."

2  Brodheim v. Cry, 584 F.3d 1262, 1265 (9th Cir. 2009).

3          "Proper exhaustion[, which] demands compliance with an agency's deadlines and

4  other critical procedural rules . . ." is required, Woodford v. Ngo, 548 U.S. 81 (2006), and may

5  not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal,"

6  Woodford, 126 S.Ct. at 2382.  Pursuant to applicable regulations, the failure to cooperate or be

7  interviewed constitutes abuse of the appeals system and results in cancellation of the appeal,

8  subjecting it to rejection upon screening. Tit. 15, §§ 3084.3(c)(8), 3084.4(d).

9          Defendants assert that on July 10, 2008, a medical appeal filed by plaintiff was

10  received and assigned the tracking number IA-16-2008-04450.  See McLean Decl., ¶ 4.  In the

11  appeal, plaintiff sought relief for his ailments, including a large abdominal mass, cancer spots in

12  his lungs, and chronic bloating and blockage with constipation.  Id., Ex. A.  The appeal, which

13  was returned to plaintiff on July 23, 2008, was partially granted because plaintiff was scheduled

14  to be seen by the prison clinic in early August 2008.  Id.  Plaintiff did not pursue his appeal to

15  the first formal level or beyond.  Accordingly, the court finds that plaintiff has not exhausted his

16  grievance regarding his medical care and treatment.

17          Because plaintiff did not exhaust his administrative remedies, the court must now

18  determine whether plaintiff should be excused from the exhaustion requirement.  The PLRA

19  only requires an inmate to exhaust administrative remedies that "are available."  42 U.S.C. §

20  1997e(a). When circumstances render administrative remedies "effectively unavailable" an

21  inmate is excused from the exhaustion requirement.  See Nunez v. Duncan, 591 F.3d 1217, 1226

22  (9th Cir. 2010) (warden's mistake excused plaintiff from the exhaustion requirement); Sapp v.

23  Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010) ("improper screening of an inmate's administrative

24  grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not

25  required under the PLRA"); see also Ngo v. Woodford, 539 F.3d 1108, 1110 (9th Cir. 2008)

26  /////

1   (suggesting that a prisoner may be excused from his failure to exhaust when prison officials

2   obstruct the grievance process).

3          Plaintiff concedes that he did not pursue his administrative remedies to the

4   Director's Level.  Nonetheless, plaintiff argues that he should be excused from his failure to

5   exhaust administrative remedies for two reasons: first, because he was not present at MCSP to

6   pursue his administrative appeal, and, second, because pursuit of the appeal was rendered

7   unnecessary by the treatment he received at the San Joaquin General Hospital.  Opp'n at 2-3.

8          Upon review of the relevant dates, the court finds that plaintiff's first argument

9   for relief from the PLRA's exhaustion requirement fails.  Plaintiff submitted an inmate appeal

10  form on July 7, 2008, which was received by the Health Care Appeals Office on July 10, 2008.

11  See Opp'n, Ex. A.  In the appeal, plaintiff requested that "the doctor address my conditions and

12  to follow through with the diagnosis and the prognosis for my recovery back to health."  Id.  On

13  July 11, 2008, plaintiff went "man down" in his cell.  Plaintiff was then taken to the San Joaquin

14  General Hospital, where he was committed for approximately ten days.  After his return and on

15  July 23, 2008, plaintiff received the informal response to his appeal.  Plaintiff had 15 days from

16  the receipt of the informal response (that is, until August 7, 2008) to appeal to the first formal

17  level.  Thus, although plaintiff was physically present at MCSP, he did not appeal to the first

18  formal level and, therefore, is not excused from the exhaustion requirement on this ground.

19         The court now turns to plaintiff's second argument that it was unnecessary for

20  him to pursue the appeal because he received the relief he sought, namely, treatment and care for

21  his illness.  See Opp'n at 3.  The PLRA requires a prisoner to exhaust his administrative

22  remedies as long as the administrative authorities can take some action in response to the

23  complaint.  See Booth v. Churner, 532 U.S. 731, 733-34 (2001); see also Brown v. Valoff, 422

24  F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as

25  some remedy remains 'available.'").  The Supreme Court in Booth recognized that for a remedy

26  to be "available," there must be the "possibility of some relief . . . ."  532 U.S. at 738.  While

1  defendants are correct that <u>Booth</u> held that the PLRA exhaustion requirements have "a decidedly

2  procedural emphasis," <u>see</u> <u>id.</u> at 738-39, "[t]he obligation to exhaust 'available' remedies persists

3  as long as some remedy remains 'available.'  Once that is no longer the case, then there are no

4  'remedies ... available,' and the prisoner need not further pursue the grievance."  <u>Brown</u>, 422

5  F.3d at 935.

6           Whether administrative remedies are "available" hinges on whether the relevant

7  administrative officials have the authority to take some action, despite the fact that they are

8  unable to provide an inmate with the form of relief he requests.  <u>Booth</u>, 532 U.S. at 741.  <u>Accord</u>

9  <u>Clement v. Cal. Dep't of Corr.</u>, 220 F. Supp. 2d 1098, 1106 (N.D. Cal. 2002) (concluding that the

10  plaintiff adequately exhausted his administrative remedies when his two grievances were

11  resolved in his favor while they were pending with the prison); <u>Brady v. Attygala</u>, 196 F. Supp.

12  2d 1016, 1021 (C.D. Cal. 2002) ("When Brady's grievance was 'granted' at the second level of

13  review, there was little else he could seek or expect from the prison administrative process; he

14  had 'won' his appeal and had been granted all the relief he sought in his grievance."); <u>Gomez v.</u>

15  <u>Winslow</u>, 177 F. Supp. 2d 977, 985 (N.D. Cal. 2001) ("Because [plaintiff] had, in essence, 'won'

16  his inmate appeal, it would be unreasonable to expect him to appeal that victory before he is

17  allowed to file suit.").

18           The facts of <u>Gomez</u> are similar to the instant case.  In <u>Gomez</u>, the plaintiff filed

19  his administrative appeal after being diagnosed with hepatitis C because he was concerned about

20  the treatment, or lack thereof, he was receiving for the illness.  Throughout the administrative

21  appeal process, his goal was twofold: first, to receive effective treatment for his illness and,

22  second, to receive information about the side-effects of treatment.  Following the conclusion of

23  the first formal level of review, plaintiff began to receive treatment for his illness.  Nonetheless,

24  he appealed to the next level because he had not yet received information about the side-effects

25  of treatment.  During the interview at the second level of review, plaintiff represented that most

26  of his concerns had been addressed.  The appeal was partially granted at the second level and

1  plaintiff did not appeal to the Director's Level.  At the district court, the defendants filed a

2  motion for judgment on the pleadings on the ground that plaintiff failed to satisfy the

3  administrative exhaustion requirement.  Upon consideration, the court examined cases from

4  other circuits that "recognized that inmates need not exhaust administrative remedies when doing

5  so would be entirely futile."  See 177 F. Supp. 2d at 984 (citations omitted).  The Gomez court

6  quoted with apparent approval another district court's comment that "[i]t would be a strange rule

7  that an inmate who has received all he expects or reasonably can expect must nevertheless

8  continue to appeal [his grievance to the highest possible level within the prison administrative

9  grievance process], even when there is nothing to appeal."  Id. (quoting Nitz v. Correctional

10  Officer French, 2001 WL 747445 *3 (N.D. Ill. 2001)).  The court then denied the defendants'

11  motion because it was "unclear what relief defendants believe would have been available to [the

12  plaintiff] had he continued to a higher level of appeal."  177 F. Supp. 2d at 985.

13            Similarly here, plaintiff filed his administrative grievance so as to receive care

14  and treatment for his ailments.  During the pendency of the informal level of review, plaintiff

15  received such care at the San Joaquin General Hospital during his ten-day stay there, as well as

16  thereafter in the form of chemotherapy treatments.  The court, then, is unable to discern – and

17  defendants do not identify – what other action administrative officials could have taken with

18  respect to plaintiff's grievance.  Because defendants have the burden of raising and proving the

19  absence of exhaustion, Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003), it falls on

20  defendants to rebut plaintiff's argument in order to prevail on their motion to dismiss.  In

21  particular, defendants must explain what administrative remedies were available to plaintiff and

22  how he failed to take advantage of those remedies.  However, here, defendants have completely

23  failed to address this issue in their submitted papers other than to say that "remedies were

24  available."  As such, the court cannot conclude that defendants carried their burden of proving

25  the absence of exhaustion regarding plaintiff's Eighth Amendment claim.  See, e.g., Burrows v.

26  Gifford, 2007 U.S. Dist. LEXIS 72077, at *2-3, 2007 WL 2827779 (E.D. Cal. 2007) (defendants

1    did not meet their burden of proving the absence of exhaustion when they failed to respond to

2    plaintiff's argument that prison officials failed to properly process his grievance); Reynolds v.

3    Cal. Dep't of Corr., 2007 U.S. Dist. LEXIS 25472, at *2 (E.D. Cal. 2007) (same).

4              In their reply, defendants raise a new theory for dismissal stemming from their

5    understanding of the following sentence in plaintiff's opposition to the motion to dismiss:

6              The deliberate indefference [*sic*] suffered by the Plaintiff at the hands of
        Mule Creek State Prison officials and medical staff is in regard to their behavior,
7       conduct, actions and/or failure to act while the Plaintiff was suffering from an
        array of symptoms due to his severe medical condition, which nearly cost him his
8       life, which is a separate, yet related issue in regard to the Plaintiff's 42 U.S.C.
        § 1983, Second Amended Complaint, and the Defendants' motion to dismiss
9       based on the claim that he did not exhaust his administrative remedies.

10   Opp'n at 3-4.

11             Defendants rely on this statement to assert that the SAC should be dismissed

12   because plaintiff effectively admits that his inmate appeal did not address the issues raised in the

13   complaint as to defendants Naseer, Palomino and, especially, Carrillo.  Defendants' argument,

14   which is distinct from that raised in their moving papers – that the SAC should be dismissed

15   because plaintiff did not proceed to the Director's Level of review with his administrative

16   grievance – fails for three reasons.

17             Initially, construing plaintiff's opposition and sur-reply[2], the court finds that the

18   above statement is merely plaintiff's attempt to articulate the obvious.  That is, in the appeal that

19   is at issue here, plaintiff sought immediate relief in the form of care and treatment for his illness.

20   The nature of that appeal is distinct from, though directly related to, the allegations in the SAC

21   that defendants deprived him of his Eighth Amendment rights by failing to timely and

22   /////

23

24             [2]  In his sur-reply, plaintiff states that "[t]he CDC-602 Inmate Administrative Appeal is
     not the forum, and lacks any authoritative jurisdiction to pursue alleged constitutional violations
25   of such a high degree that the relief sought in the Plaintiff's second amended complaint could not
     possibly be found, and the relief sought through such a process would certainly prove futile."
26   Sur-reply at 7-8.

1  adequately provide care and treatment for his illness.  This is sufficient for purposes of the

2  exhaustion requirement.  See Jones v. Bock, 549 U.S. 199, 219 (2007).[3]

3        Second, "[i]t is improper for a moving party to introduce new facts or different

4  legal arguments in the reply brief than those presented in the moving papers.  State of Nev. v.

5  Watkins, 914 F.2d 1545, 1560 (9th Cir. 1990) ("[Parties] cannot raise a new issue for the first

6  time in their reply briefs." (citations omitted)); United States v. Romm, 455 F.3d 990, 997 (9th

7  Cir. 2006) (citing Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999)); Cedano-Viera v.

8  Ashcroft, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("[W]e decline to consider new issues raised

9  for the first time in a reply brief."); Bazuaye v. INS, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues

10 raised for the first time in the reply brief are waived."); Ass'n of Irritated Residents v. C & R

11 Vanderham Dairy, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006) ("It is inappropriate to consider

12 arguments raised for the first time in a reply brief").

13       Finally, and relatedly, to the extent defendants argue that Carillo should be

14 dismissed because the underlying appeal did not address plaintiff's claims against him,

15 defendants abandoned this argument by failing to include it in their moving papers.  See Jones,

16 549 U.S. at 212-17 (holding that exhaustion is an affirmative defense).  Curiously, this argument

17 directly contravenes defendants' argument in their motion to dismiss that the appeal at issue

18 "raises the same issues that [plaintiff] alleges in his second amended complaint with respect to

19 the claims against NASEER, PALOMINO and CARILLO."  Mot. to Dismiss at 8-9.

20

21       [3] In Jones, the Supreme Court held that "exhaustion is not per se inadequate simply
   because an individual later sued was not named in the grievances."  Id.  The Court reasoned that
22 promoting early notice to prison officials is not the purpose of the exhaustion requirement.  Id.
   (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004)).  Rather, the Court observed, the
23 purpose underlying the exhaustion requirement is to allow prison officials to address complaints
   about the programs they administer before being subject to suit, thereby reducing litigation to the
24 extent complaints are satisfactorily resolved.  See Jones, 549 U.S. at 219.  In California, the
   CDCR's inmate appeals form requires an inmate only "to describe the problem and action
25 requested." Cal. Code Regs., tit. 15, § 3084.2(a).  Thus, "[t]he form used to initiate a CDC
   grievance does not require an inmate to name or identify specific persons."  Lewis v. Mitchell,
26 416 F. Supp. 2d 935, 941 (S.D. Cal. 2005).

1   Additionally, a cursory review of plaintiff's appeal would have revealed that the appeal did not

2   specifically assert any allegations as to Carillo.  Because defendants failed to assert this

3   argument in the first instance, they may not avail themselves of the opportunity to do so in their

4   reply.

5           Accordingly, defendants' motion to dismiss should be denied.

6   2.      Defendants' Motion to Modify the Scheduling Order

7           In their June 2, 2011 motion to modify the scheduling order, defendants request

8   that the June 14, 2011 deadline for discovery be extended to allow them the opportunity to

9   depose a witness identified by plaintiff in his responses to defendants' discovery requests.

10  Plaintiff filed a statement of non-opposition to this motion.  Based thereon, this motion will be

11  granted.  The June 14, 2011 discovery deadline is extended to August 1, 2011 for the limited

12  purpose of allowing defendants to notice and take the deposition of plaintiff's witness, Ronald

13  Rivers.  The March 16, 2011 scheduling order remains unchanged in all other respects.

14          Accordingly, IT IS HEREBY ORDERED that:

15          1.  Defendants' June 2, 2011 motion to modify the March 16, 2011 scheduling

16  order is granted;

17          2.  The Clerk of the Court is directed to send a copy of plaintiff's second amended

18  complaint to J. Clark Kelso, Receiver, c/o California Department of Corrections and

19  Rehabilitation Controlled Correspondence Unit, P.O. Box 4038, Sacramento, CA 95812-4038;

20  and

21          IT IS HEREBY RECOMMENDED that defendants' April 13, 2011 motion to

22  dismiss be denied.

23          These findings and recommendations are submitted to the United States District

24  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

25  days after being served with these findings and recommendations, any party may file written

26  objections with the court and serve a copy on all parties.  Such a document should be captioned

1   "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised

2   that failure to file objections within the specified time may waive the right to appeal the District

3   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4   DATED: July 5, 2011.

5

6   _____
    UNITED STATES MAGISTRATE JUDGE

7

8   /014;alca3407.mtd

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26