1
2
3
4
5
6
7
8             IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSEPH G. ALCALA,

11            Plaintiff,                No. 2:09-cv-3407 KJM JFM (PC)

12        vs.

13   MIKE MARTEL, Warden, *et al.*,        ORDER AND

14            Defendants.            FINDINGS & RECOMMENDATIONS

15   _____/

16            Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Before the court is defendants' motion for summary judgment.  Plaintiff

18   opposes the motion.  Also before the court are plaintiff's motion for deferment and defendants'

19   motion to strike sur-reply.

20                      UNDISPUTED FACTS

21            All facts are undisputed unless noted otherwise.  At all times relevant to this

22   action, plaintiff was a state prisoner incarcerated at Mule Creek State Prison ("MCSP") in Ione,

23   California.  Defendant Sahir Naseer was a physician at MCSP.  Naseer Decl., ¶¶ 1-2.  Defendant

24   Aurelia Palomino was a registered nurse at MCSP.  Palomino Decl., ¶¶ 1-2. Defendant R.

25   Carrillo was a correctional sergeant at MCSP.  Carrillo Decl., ¶¶ 1-2.

26   /////

1              On May 18, 2008, plaintiff completed a Health Care Services Request Form,

2   CDC 7362 ("CDC 7362 Form"), complaining of a "hard lump on [his] left mid/upper abdomen

3   about the size of [his] fist." Opp'n, Ex. A. Plaintiff did not complain of pain on this form. <u>See</u>

4   <u>id.</u>; <u>see</u> <u>also</u> Alcala Dep. at 24.

5              On May 20, 2008, plaintiff was assessed by Nurse Palomino in response to his

6   CDC 7362 Form. Opp'n, Ex. A; Palomino Decl., ¶ 4. During the assessment, plaintiff did not

7   complain of pain; he merely noted that "it's just uncomfortable." <u>Id.</u> Based on her assessment

8   of plaintiff, Nurse Palomino informed Dr. Naseer of plaintiff's medical condition that same day

9   because she deemed it was medically warranted and the proper course of treatment. Palomino

10  Decl., ¶ 4.

11             On May 20, 2008, plaintiff was examined by Dr. Naseer. Naseer Decl., ¶ 5.

12  Seeking to rule out malignancy, Dr. Naseer submitted a Physician Request for Services on

13  plaintiff's behalf requesting that plaintiff be referred to San Joaquin General Hospital ("SJGH")

14  "ASAP" for a CT scan of his abdomen and pelvis with contrast. <u>Id.</u>; Naseer Decl, Ex. A. Dr.

15  Naseer also indicated that this request was "Routine" by circling that option on the Physician

16  Request for Services form. Naseer Decl., Ex. A. Also on May 20, 2008, Dr. Naseer submitted a

17  Physician Request for Services on plaintiff's behalf requesting that plaintiff be referred to SJGH

18  for a routine surgery consultation after his CT scan was scheduled. <u>Id</u> ¶ 6.

19             When Dr. Naseer wishes to obtain outside treatment for an inmate, he must

20  complete a Physician Request for Services, which requires the approval of the Chief Medical

21  Officer. Naseer Decl., ¶ 4. Dr. Naseer does not schedule appointments with outside providers.

22  <u>Id.</u> The prison's utilization management schedulers are responsible for acquiring contracting

23  with outside providers and scheduling those appointments. <u>Id.</u> On the Physician Request for

24  Services, Dr. Naseer can indicate urgency by circling the terms 'emergent,' 'urgent' or 'routine.'

25  <u>Id.</u> He also has the option to write in terms, such as "ASAP." <u>Id.</u> Besides his circling options,

26  Dr. Naseer has no authority as to how quickly appointments are scheduled. <u>Id.</u>

1    On May 20, 2008, Dr. Naseer also gave Nurse Palomino a verbal order to write an

2  order for plaintiff to be seen in the MD (Doctor's) Line in one week for a follow-up of his

3  abdominal mass.  Naseer Decl., ¶ 6; Naseer Decl., Ex. C.  Additionally, Dr. Naseer ordered

4  laboratory tests for plaintiff, including a complete blood count, comprehensive metabolic panel

5  and urinalysis.  Id.

6    Dr. Naseer's requests for a CT scan and routine surgery consultation were

7  approved on May 21, 2008.  Naseer Decl., ¶¶ 5-6; Exs. A-B.

8    On June 2, 2008, plaintiff completed another CDC 7362 Form complaining of "a

9  (fist size) lump on the left side of [his] Abdomen, which keeps [him] up all night long suffering

10  profound discomfort and persistant [sic] belching."  Opp'n, Ex. B.  Plaintiff did not complain of

11  pain.  Id.; Alcala Dep. at 33.

12    Plaintiff was examined by Nurse Palomino on June 3, 2008 in response to the

13  June 2, 2008 CDC 7362 Form.  Opp'n, Ex. B; Palomino Decl., ¶ 6.  Nurse Palomino's notes

14  indicate that plaintiff had a pending CT scan and that he was scheduled to see Dr. Naseer within

15  the week.  Opp'n, Ex. B; Palomino Decl., ¶ 6.

16    On June 5, 2008, Dr. Naseer examined plaintiff for a follow-up of his abdominal

17  mass.  Naseer Decl., ¶ 7; Ex. D.  In his notes, Dr. Naseer noted that plaintiff had already been

18  referred for a surgery consultation and CT scan, which he was to receive within thirty days.  Id.

19  He also noted that plaintiff did not have any new complaints and no complaints of pain.  Id.

20    On June 9, 2008, plaintiff went "man-down" on the yard and was taken to the

21  Triage and Treatment Area ("TTA") at MCSP.  Palomino Decl., ¶ 7; Ex. D.  The TTA notes

22  reflect that plaintiff was alert and oriented, though anxious, on examination.  Palomino Decl.,

23  Ex. D.  During the examination, plaintiff expressed concern over when he was scheduled to

24  receive a CT scan.  Id.  He was in no acute distress and was described as "very calm."  Id.  After

25  discussion with TTA staff, plaintiff stated his anxiety was resolved, and he was placed on the

26  MD Line for the next day.  Id.

On June 10, 2008, plaintiff submitted a third CDC 7362 Form.  Palomino Decl., Ex. E.  In this form, plaintiff sought "Immediate Emergency Health Care Treatment, In that I have a large (Base-Ball Size) lump in my left Abdomen that is causing me pain, discomfort, bloating, constipation, indigestion, loss of weight, loss of appetite, and it must be pressing down against my heart because when I lie flat on my back I can see the left side of my stomach palpitating hard up and down with the beat of my heart."  Id.

In response to this third CDC 7362 Form, plaintiff was seen by Nurse S. Massaglia, not a party to this action, on June 13, 2008.  Palomino Decl., ¶ 8; Ex. E.  After Nurse Massaglia's assessment, plaintiff was referred to Dr. Hawkins, also not a party to this action.  Id. Based on Dr. Hawkins's verbal orders, plaintiff was sent to SJGH for a CAT scan.  See Palomino Decl., Ex. F.  Neither Nurse Palomino nor Dr. Naseer assessed or examined plaintiff on this day.

On June 17, 2008, plaintiff filled out a fourth CDC 7362 Form.  Palomino Decl., Ex. F.  Plaintiff wanted to know what the next steps would be in his health care plan.  Id.

On June 18, 2008, Nurse Palomino assessed plaintiff in response to the June 17, 2008 CDC 7362 Form.  Palomino Decl., ¶ 9; Ex. F.  During this assessment, plaintiff requested a regular diet instead of a pureed food diet, and he wanted to see the doctor, though he had no complaints of pain.  Id.  Following this assessment, Nurse Palomino spoke with Dr. Hawkins about plaintiff's medical history, request for a regular diet and request to see a doctor.  Palomino Decl., ¶ 9.  Dr. Hawkins gave Nurse Palomino verbal orders for a regular diet, a follow-up appointment for plaintiff on June 20, 2008 in the MD Line, and a dietitian evaluation.  Id.  On June 23, 2008, plaintiff's diet was changed to a regular diet.  Id. ¶ 10; Ex. G.

On June 24, 2008, plaintiff filled out a fifth CDC 7362 Form.  Palomino Decl., ¶ 11; Ex. H.  On this form, which was addressed to Dr. Hawkins, plaintiff expressed concerns with the seriousness of his condition due to the size of his tumor and its spread to plaintiff's lungs.  Id.  Plaintiff requested to be sent out to receive a biopsy and prospective treatment.  Id.

4

1        On June 25, 2008, plaintiff completed a sixth CDC 7362 Form requesting

2   medicine for pain management.  Palomino Decl., ¶ 11; Ex. H.

3        On June 27, 2008, Nurse Palomino assessed plaintiff with respect to his fifth and

4   sixth CDC 7362 Forms.  Palomino Decl., ¶ 11; Ex. H.  During the assessment, plaintiff scored

5   his pain at night as 10 on a scale of 1 to 10.  Id.  Nurse Palomino contacted Physician Assistant

6   ("PA") Todd who prescribed Tylenol #3.  Id.  Nurse Palomino also reassured plaintiff that his

7   biopsy was pending after PA Todd verified the appointment with the receiving and release nurse.

8   Id.  PA Todd wrote an order for plaintiff to follow up in the MD Line between June 30 and July

9   3, 3008.  Id.

10        On June 30, 2008, plaintiff's cell mate, Ronald Rivers, called "man-down" at 7:30

11   a.m. after plaintiff repeatedly complained of pain.  Alcala Dep. at 68-69.  In response, plaintiff

12   claims defendant Carrillo and at least four other officers arrived at plaintiff's cell where plaintiff

13   was lying in a fetal position on his bed.  Id. at 71-73.  Plaintiff alleges Carrillo accused plaintiff

14   of faking his illness.  Id. at 73-76.  Plaintiff also alleges Carrillo refused to allow medical staff to

15   carry plaintiff on a stretcher from his second floor cell to the bottom of the stairs where a cart

16   awaited to take plaintiff to the TTA.  Id.  Instead, plaintiff was forced to walk with the assistance

17   of two or three people "[m]aybe 25, 30 feet" from his cell to the top of the stairs and then down

18   "[m]aybe 15 steps" to the cart at the bottom of the steps.  Id.  Plaintiff estimates he walked for a

19   total of five to seven minutes.  Id. at 77.  He also claims that he was forced to wait a couple of

20   hours before being seen by a doctor in the TTA.  See id. at 80.

21        Carrillo has no recollection of plaintiff going "man-down" on June 30, 2008.

22   Carrillo Decl., ¶ 5.  Carrillo declares that if plaintiff had gone "man-down," he would never have

23   forced plaintiff to walk when a stretcher was present.  Id. ¶ 6.

24        Plaintiff was seen in the TTA at 8:00 a.m. the morning of June 30, 2008 with

25   complaints of constipation for five days and an inability to eat for two days.  Naseer Decl., Ex.

26   G.  At 8:45 a.m., plaintiff was seen by Dr. Wesley Hashimoto, not a party to this action, who

1  diagnosed plaintiff with an enlarging abdominal mass and possible colon obstruction.  Id.

2  Plaintiff was sent by ambulance to SJGH Emergency Department.  Id.

3          Plaintiff remained at SJGH from June 30, 2008 to July 2, 2008.  Naseer Decl.,

4  ¶ 12.

5          On his return from SJGH, plaintiff was placed in administrative segregation

6  where he remained until July 11, 2008.  Alcala Dep. at 82-85.  None of the defendants were

7  responsible for plaintiff's placement in administrative segregation.  Carrillo Decl., ¶ 8; Naseer

8  Decl., ¶ 23; Palomino Decl. ¶ 18.  Plaintiff admits that none of these defendants had any

9  involvement in his placement in administrative segregation.  Alcala Dep. at 84.

10          On July 5, 2008, plaintiff completed a seventh CDC 7362 Form.  Palomino Decl.,

11  ¶ 12; Ex. I.  Plaintiff requested a natural laxative to help with his constipation.  Id.

12          On July 8, 2008, plaintiff was seen by a doctor in the TTA.  Naseer Decl., Ex. J.

13  The doctor prescribed Lactulose, Milk of Magnesia and Tylenol #3, wrote an order for plaintiff

14  to return to the MD Line in 1-2 weeks, to receive an extra sack lunch for 30 days, to enroll in the

15  High Risk Clinic and to be referred to oncology ASAP.  Id.

16          On July 9, 2008, a triage nurse assessed plaintiff in response to his July 5, 2008

17  CDC 7362 Form.  Palomino Decl., ¶ 12; Ex. I.  Neither Nurse Palomino nor Dr. Naseer saw

18  plaintiff in response to this request.

19          On July 9, 2008, plaintiff completed an eighth CDC 7362 Form.  Palomino Decl.,

20  ¶ 13; Ex. J.  Plaintiff requested to see the dietician to make changes to his diet.  Id.  Neither

21  Nurse Palomino nor Dr. Naseer saw plaintiff in response to this request.

22          On July 11, 2008, plaintiff was seen in the TTA at 7:00 a.m. following an

23  emergency response.  Palomino Decl., ¶ 14; Ex. K.  The TTA notes indicate that plaintiff was

24  taken by emergency cart to TTA where he complained of severe abdominal pain.  Id., Ex. K.

25  Neither Nurse Palomino nor Dr. Naseer saw plaintiff in response to this emergency.

26  /////

1    Plaintiff was admitted to SJGH on July 11, 2008 and was discharged on July 21,

2  2008.  Naseer Decl., Ex. L.  He was ultimately diagnosed with non-Hodgkins lymphoma stage

3  IV.  Id.  Plaintiff began chemotherapy treatment on July 17, 2008.  Id.  Plaintiff's cancer is

4  presently in remission.  Alcala Dep. at 15-16.

5                              RELEVANT PROCEDURAL BACKGROUND

6    Plaintiff initiated this action on December 8, 2009 as a petition for writ of habeas

7  corpus.  See Doc. No. 1.  Plaintiff's petition was comprised of two claims: the instant claim and

8  a challenge to a disciplinary conviction and subsequent loss of good-time credits.  Because the

9  first claim concerned his conditions of confinement and the second claim concerned the fact or

10 duration of his confinement, the court converted the petition to a civil rights action, and plaintiff

11 was ordered to bring his challenge to the disciplinary conviction in a separate action pursuant to

12 28 U.S.C. § 2254.  See Doc. No. 10; Related Case 2:10-cv-3448-JFM.

13    On September 16, 2011, defendants filed a motion for summary judgment.

14 Plaintiff opposes the motion.  Defendants filed a reply.  On March 30, 2012, plaintiff filed a sur-

15 reply.  Defendants have filed a motion to strike the sur-reply.

16    On March 5, 2012, plaintiff filed a request for deferment.  Defendants oppose this

17 motion.

18                            SUMMARY JUDGMENT STANDARDS UNDER RULE 56

19    Summary judgment is appropriate when it is demonstrated that there exists "no

20 genuine issue as to any material fact and that the moving party is entitled to a judgment as a

21 matter of law."  Fed. R. Civ. P. 56(c).

22    Under summary judgment practice, the moving party

23         always bears the initial responsibility of informing the district court of the basis
           for its motion, and identifying those portions of "the pleadings, depositions,
24         answers to interrogatories, and admissions on file, together with the affidavits, if
           any," which it believes demonstrate the absence of a genuine issue of material
25         fact.

26 /////

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

        If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

        In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

committee's note on 1963 amendments).

              In resolving the summary judgment motion, the court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

              On November 30, 2010, the court advised plaintiff of the requirements for

opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and

Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

DISCUSSION

I.    Plaintiff's Request for Deferment

              Over five months after defendants filed their motion for summary judgment,

plaintiff filed a request for deferment from summary judgment.  Plaintiff seeks a deferment so

that he can submit the declaration of James Daly, an inmate and former doctor, whom plaintiff

9

1    intends to rely on as an expert, and the declaration of plaintiff's former cell-mate, Ronald Rivers,

2    who called "man-down" on June 30, 2008.  Plaintiff also seeks additional time to locate and

3    retain the services of an attorney.

4           Defendants oppose the motion on the grounds that plaintiff fails to identify any

5    facts that either Daly or Rivers might reveal and further fails to explain how their declarations

6    would preclude summary judgment.  As to plaintiff's request for additional time to retain an

7    attorney, defendants contend this case has been pending for nearly two years and plaintiff's

8    request is untimely.

9           On review, the court will deny plaintiff's request for deferment.  The court first

10   takes judicial notice of the fact that Daly is not a medical doctor because his medical license was

11   revoked on February 24, 2006.  See Doc. No. 65-2.  Even assuming Daly qualifies as an expert

12   witness, the court finds that Daly's declaration would not assist in plaintiff's opposition to the

13   motion for summary judgment.  Plaintiff intends to submit Daly's declaration to argue that Dr.

14   Naseer acted with deliberate indifference when he failed to send plaintiff to SJGH immediately

15   upon becoming aware of the lump in plaintiff's abdomen.  Because deliberate indifference is an

16   inquiry that focuses on the actual state of mind of the individual defendant, mere differences in

17   judgment between medical professionals regarding appropriate medical diagnosis and treatment

18   are not enough to establish a deliberate indifference claim.  See Sanchez v. Vild, 891 F.2d 240,

19   242 (9th Cir. 1989).  Next, for the reasons set forth below, Rivers's declaration would be

20   similarly unhelpful to plaintiff.  Finally, the court notes that this action has been pending since

21   December 8, 2009.  Plaintiff has had more than sufficient time to locate an attorney.

22   II.   Defendants' Request to Strike Sur-Reply

23          Defendants request that plaintiff's sur-reply, which consists solely of Daly's

24   declaration, be stricken.  See Doc. No. 67.  Sur-replies concerning motions are generally not

25   permitted, and plaintiff did not seek leave to file a sur-reply.  See Local Rule 230(l).  Therefore,

26   the sur-reply will not be considered.

III.     Defendants' Motion for Summary Judgment

      A.     Eighth Amendment Claims of Deliberate Indifference

          1.     Dr. Sahir Naseer

          In order to establish a violation of the Eighth Amendment based on alleged inadequate medical care, an inmate must prove acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  Hudson v. McMillian, 503 U.S. 1, 5 (1992); Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A difference of medical opinion about treatment, without more, does not amount to a deliberate indifference to serious medical needs.  See Sanchez, 891 F.2d at 242.  Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment.  See Broughton v. Cutter Lab., 622 F.2d 458, 460 (9th Cir. 1980).

          In the instant case, plaintiff's Eighth Amendment claim is predicated, at bottom, on the plaintiff's impression that Dr. Naseer should have sent him to an outside hospital immediately upon becoming aware of the lump in plaintiff's abdomen.  Plaintiff, however, has tendered no evidence that the medical judgment of Dr. Naseer was the product of deliberate indifference to his condition.  To the contrary, the undisputed evidence shows that, based on plaintiff's complaints, including plaintiff's failure to complain of pain, and following Dr. Naseer's examination of plaintiff, Dr. Naseer referred plaintiff to SJSH for a CT scan, requested a number of laboratory tests and ordered a routine surgery consultation following the CT scan.  Although plaintiff contends Dr. Naseer should have done more, "a difference of medical opinion as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal quotation marks omitted).  Instead, the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and that they chose this course in conscious disregard of an excessive risk to [the] plaintiff's health."  Id. (internal citations omitted); see also Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of

1  opinion does not amount to a deliberate indifference to [a prisoner's] serious medical needs.");

2  see also Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own

3  opinion as to the appropriate course of care does not create a triable issue of fact because he has

4  not shown that he has any medical training or expertise upon which to base such an opinion.").

5  Plaintiff has failed to make such a showing.

6         For these reasons, defendant Dr. Naseer is entitled to summary judgment on

7  plaintiff's Eighth Amendment claim.

8                 2.    Nurse Aurelia Palomino

9         Plaintiff brings suit against Nurse Palomino on the ground that she was

10 deliberately indifferent to his medical when she refused to refer him to a doctor after plaintiff's

11 repeated requests for examination.  The record does not support plaintiff's claim.

12         Plaintiff first saw Nurse Palomino on May 20, 2008.  Following the nurse's

13 assessment of plaintiff, Nurse Palomino contacted Dr. Naseer regarding plaintiff's medical

14 condition.  Plaintiff acknowledges that Nurse Palomino deemed his condition "serious enough"

15 to contact Dr. Naseer.  See Alcala Dep. at 24.  There is no deliberate indifference on these facts.

16         Nurse Palomino next saw plaintiff on June 3, 2008 when she informed plaintiff

17 that he had a pending CT scan and that he was scheduled to see Dr. Naseer within the week.

18 Nurse Palomino clearly did not deny plaintiff the opportunity to see a doctor, as it is evident that

19 plaintiff was seen by Dr. Naseer two days later on June 5, 2008.  There is no deliberate

20 indifference on these facts.

21         Following her third assessment of plaintiff in response to his June 17, 2008 CDC

22 7362 Form, Nurse Palomino spoke to Dr. Hawkins regarding plaintiff's medical condition and

23 his request for a change in diet.  Plaintiff was thereafter scheduled for a follow-up appointment

24 in the MD Line and he received a change in diet.  Plaintiff admits that Nurse Palomino did

25 "nothing wrong" with respect to this assessment.  Alcala Dep. at 61.  Thus, there is no deliberate

26 indifference here.

1    Finally, in response to plaintiff's June 25, 2008 request for medication, Nurse

2  Palomino contacted PA Todd, who ordered pain medication for plaintiff.  Plaintiff admits Nurse

3  Palomino did not err regarding this request.  Alcala Dep. at 65.  There is no deliberate

4  indifference here.

5    Because plaintiff has failed to submit any evidence that Nurse Palomino was

6  deliberately indifferent to his medical needs, Nurse Palomino is entitled to summary judgment

7  on plaintiff's Eighth Amendment claim.

8    3.    Correctional Officer R. Carrillo

9    Plaintiff lastly alleges that Carrillo violated his Eighth Amendment rights by

10  accusing plaintiff of faking his illness and thereafter refusing to allow plaintiff to be transported

11  on a stretcher after plaintiff went "man-down" on June 30, 2008.

12    It is true that delays in providing medical care may manifest deliberate

13  indifference.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  Such claims require proof of two

14  elements: "the seriousness of the prisoner's medical need and the nature of the defendant's

15  response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991).  However, in

16  order to establish a claim of deliberate indifference arising from delay in providing care, a

17  plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th

18  Cir. 1994); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't,

19  865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d

20  404, 407 (9th Cir. 1985).  "A prisoner need not show his harm was substantial; however, such

21  would provide additional support for the inmate's claim that the defendant was deliberately

22  indifferent to his needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

23    Even drawing all reasonable inferences in favor of plaintiff, the court nonetheless

24  finds that summary judgment should be entered in favor of Carrillo.  Plaintiff has simply failed

25  to submit any evidence that would demonstrate deliberate indifference on Carrillo's part.

26  Plaintiff alleges that during the seven minutes that he was forced to walk 30 feet from his cell to

13

1  the top of the stairs and then 15 steps to the bottom of the stairs, Carrillo's actions contributed to

2  plaintiff's pain and suffering.  Although pain and suffering may be actionable under the Eighth

3  Amendment, <u>McGuckin</u>, 974 F.2d at 1060, the court cannot find that this seven minute period

4  constitutes a violation, particularly in light of plaintiff's failure to submit any evidence that the

5  delay exacerbated his pain or worsened his medical condition.  <u>See</u> <u>Berry v. Bunnell</u>, 39 F.3d

6  1056, 1057 (9th Cir. 1994)

7            At best, Carrillo can be accused of insensitive comments and an uncaring attitude,

8  yet insofar as plaintiff alleges Carrillo verbally abused and/or harassed plaintiff by accusing him

9  of faking an illness, this claim fails as a matter of law because verbal harassment does not

10  constitute a violation of the Eighth Amendment.  <u>Keenan v. Hall</u>, 83 F.3d 1083, 1092 (9th Cir.

11  1996).

12        B.      <u>Conditions of Confinement</u>

13            Plaintiff also raises claims challenging the decision to place plaintiff in

14  administrative segregation following his return from SJGH.  Plaintiff, however, readily admits

15  that none of the defendants were involved in that decision.  Accordingly, summary judgment

16  should be entered on this claim.

17        C.      <u>Qualified Immunity</u>

18            Because the court concluded above that plaintiff fails to raise a triable issue of

19  fact on his claims that his constitutional rights were violated, the court need not reach the issue

20  of qualified immunity.

21            Accordingly, IT IS HEREBY ORDERED that:

22            1.  Plaintiff's request for deferment is denied;

23            2.  Defendants' request to strike sur-reply is granted;

24            3.  Defendants' request for judicial notice is granted; and

25  /////

26  /////

14

1        IT IS HEREBY RECOMMENDED that defendants' motion for summary

2  judgment be granted.

3        These findings and recommendations are submitted to the United States District

4  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

5  days after being served with these findings and recommendations, any party may file written

6  objections with the court and serve a copy on all parties.  Such a document should be captioned

7  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised

8  that failure to file objections within the specified time may waive the right to appeal the District

9  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10  DATED: June 19, 2012.

11

12                                    _____

13                                    UNITED STATES MAGISTRATE JUDGE

14  /014;alca3407.msj

15

16

17

18

19

20

21

22

23

24

25

26