1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSEPH G. ALCALA,

11              Plaintiff,                    No. 2:09-cv-3407 KJM JFM (PC)

12        vs.

13   MIKE MARTEL, Warden, *et al.*,          ORDER AND

14              Defendants.                  FINDINGS & RECOMMENDATIONS

15   _____/

16            Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Plaintiff alleges that defendants Naseer, Palomino and Carrillo violated his

18   Eighth Amendment rights by acting with deliberate indifference to his serious medical needs.

19   Before the court is defendants' motion for summary judgment.  Plaintiff opposes the motion.

20   For the following reasons, the motion should be granted.

21                            UNDISPUTED FACTS

22            All facts are undisputed unless noted otherwise.  At all times relevant to this

23   action, plaintiff was a state prisoner incarcerated at Mule Creek State Prison ("MCSP") in Ione,

24   California.  Defendant Sahir Naseer was a physician at MCSP.  Naseer Decl., ¶¶ 1-2.  Defendant

25   Aurelia Palomino was a registered nurse at MCSP.  Palomino Decl., ¶¶ 1-2.  Defendant R.

26   Carrillo was a correctional sergeant at MCSP.  Carrillo Decl., ¶¶ 1-2.

1

1    On May 18, 2008, plaintiff completed a Health Care Services Request Form,

2  CDC 7362 ("CDC 7362 Form"), complaining of a "hard lump on [his] left mid/upper abdomen

3  about the size of [his] fist." Pl.'s Opp'n Mot. Summ. J., Ex. A.  Plaintiff did not complain of

4  pain on this form.  See id.; see also Alcala Dep. at 24.

5    On May 20, 2008, plaintiff was assessed by Nurse Palomino in response to his

6  CDC 7362 Form.  Pl.'s Opp'n Mot. Summ. J., Ex. A; Palomino Decl., ¶ 4.  Based on her

7  assessment of plaintiff, Nurse Palomino informed Dr. Naseer of plaintiff's medical condition that

8  same day because she deemed it was medically warranted and the proper course of treatment.

9  Palomino Decl., ¶ 4.

10    On May 20, 2008, plaintiff was examined by Dr. Naseer.  Naseer Decl., ¶ 5.  Dr.

11  Naseer submitted a Physician Request for Services on plaintiff's behalf requesting that plaintiff

12  be referred to San Joaquin General Hospital ("SJGH") "ASAP" for a CT scan of his abdomen

13  and pelvis with contrast.  Id.; Naseer Decl, Ex. A.  Dr. Naseer also indicated that this request was

14  "Routine" by circling that option on the Physician Request for Services form.  Naseer Decl., Ex.

15  A.  Also on May 20, 2008, Dr. Naseer submitted a Physician Request for Services on plaintiff's

16  behalf requesting that plaintiff be referred to SJGH for a routine surgery consultation after his

17  CT scan was scheduled.  Id. ¶ 6.

18    When Dr. Naseer wishes to obtain outside treatment for an inmate, he must

19  complete a Physician Request for Services, which requires the approval of the Chief Medical

20  Officer.  Naseer Decl., ¶ 4.  Dr. Naseer does not schedule appointments with outside providers.

21  Id.  The prison's utilization management schedulers are responsible for acquiring contracting

22  with outside providers and scheduling those appointments.  Id.  On the Physician Request for

23  Services, Dr. Naseer can indicate urgency by circling the terms 'emergent,' 'urgent' or 'routine.'

24  Id.  He also has the option to write in terms, such as "ASAP."  Id.  Besides his circling options,

25  Dr. Naseer has no authority as to how quickly appointments are scheduled.  Id.

26  /////

1    On May 20, 2008, Dr. Naseer also gave Nurse Palomino a verbal order to write an

2  order for plaintiff to be seen in the MD (Doctor's) Line in one week for a follow-up of his

3  abdominal mass.  Naseer Decl., ¶ 6; Naseer Decl., Ex. C.  Additionally, Dr. Naseer ordered

4  laboratory tests for plaintiff, including a complete blood count, comprehensive metabolic panel

5  and urinalysis.  Id.

6    Dr. Naseer's requests for a CT scan and routine surgery consultation were

7  approved on May 21, 2008.  Naseer Decl., ¶¶ 5-6; Exs. A-B.

8    On June 2, 2008, plaintiff completed another CDC 7362 Form complaining of "a

9  (fist size) lump on the left side of [his] Abdomen, which keeps [him] up all night long suffering

10  profound discomfort and persistant [sic] belching."  Pl.'s Opp'n Mot. Summ. J., Ex. B.  Plaintiff

11  did not complain of pain.  Id.; Alcala Dep. at 33.

12    Plaintiff was examined by Nurse Palomino on June 3, 2008 in response to the

13  June 2, 2008 CDC 7362 Form.  Pl.'s Opp'n Mot. Summ. J., Ex. B; Palomino Decl., ¶ 6.  Nurse

14  Palomino's notes indicate that plaintiff had a pending CT scan and that he was scheduled to see

15  Dr. Naseer within the week.  Pl.'s Opp'n Mot. Summ. J., Ex. B; Palomino Decl., ¶ 6.

16    On June 5, 2008, Dr. Naseer examined plaintiff for a follow-up of his abdominal

17  mass.  Naseer Decl., ¶ 8; Ex. D.  In his notes, Dr. Naseer noted that plaintiff had already been

18  referred for a surgery consultation and CT scan, which he was to receive within thirty days.  Id.

19  He also noted that plaintiff did not have any new complaints and no complaints of pain.  Id.

20    On June 9, 2008, plaintiff went "man-down" on the yard and was taken to the

21  Triage and Treatment Area ("TTA") at MCSP.  Palomino Decl., ¶ 7; Ex. D.  The TTA notes

22  reflect that plaintiff was alert and oriented, though anxious, on examination.  Palomino Decl.,

23  Ex. D.  During the examination, plaintiff expressed concern over when he was scheduled to

24  receive a CT scan.  Id.  The notes indicate that he was in no acute distress and was described as

25  "very calm."  Id.  After discussion with TTA staff, the notes indicate that plaintiff stated his

26  anxiety was resolved, and he was placed on the MD Line for the next day.  Id.

3

1         On June 10, 2008, plaintiff submitted a third CDC 7362 Form.  Palomino Decl.,

2    Ex. E.  In this form, plaintiff sought "Immediate Emergency Health Care Treatment, In that I

3    have a large (Base-Ball Size) lump in my left Abdomen that is causing me pain, discomfort,

4    bloating, constipation, indigestion, loss of weight, loss of appetite, and it must be pressing down

5    against my heart because when I lie flat on my back I can see the left side of my stomach

6    palpitating hard up and down with the beat of my heart."  Id.

7         In response to this third CDC 7362 Form, plaintiff was seen by Nurse S.

8    Massaglia, not a party to this action, on June 13, 2008.  Palomino Decl., ¶ 8; Ex. E.  After Nurse

9    Massaglia's assessment, plaintiff was referred to Dr. Hawkins, also not a party to this action.  Id.

10   Based on Dr. Hawkins's verbal orders, plaintiff was sent to SJGH for a CAT scan.  See

11   Palomino Decl., Ex. F.  Neither Nurse Palomino nor Dr. Naseer assessed or examined plaintiff

12   on this day.

13        On June 17, 2008, plaintiff filled out a fourth CDC 7362 Form.  Palomino Decl.,

14   Ex. F.  Plaintiff wanted to know what the next steps would be in his health care plan.  Id.

15        On June 18, 2008, Nurse Palomino assessed plaintiff in response to the June 17,

16   2008 CDC 7362 Form.  Palomino Decl., ¶ 9; Ex. F.  Following this assessment, Nurse Palomino

17   spoke with Dr. Hawkins about plaintiff's medical history, request for a regular diet and request

18   to see a doctor.  Palomino Decl., ¶ 9.  Dr. Hawkins gave Nurse Palomino verbal orders for a

19   regular diet, a follow-up appointment for plaintiff on June 20, 2008 in the MD Line, and a

20   dietitian evaluation.  Id.  On June 23, 2008, plaintiff's diet was changed to a regular diet.  Id.

21   ¶ 10; Ex. G.  On June 24, 2008, plaintiff filled out a fifth CDC 7362 Form.  Palomino Decl.,

22   ¶ 11; Ex. H.  On this form, which was addressed to Dr. Hawkins, plaintiff expressed concerns

23   with the seriousness of his condition due to the size of his tumor and its spread to plaintiff's

24   lungs.  Id.  Plaintiff requested to be sent out to receive a biopsy and prospective treatment.  Id.

25        On June 25, 2008, plaintiff completed a sixth CDC 7362 Form requesting

26   medicine for pain management.  Palomino Decl., ¶ 11; Ex. H.

1    On June 27, 2008, Nurse Palomino assessed plaintiff with respect to his fifth and

2    sixth CDC 7362 Forms.  Palomino Decl., ¶ 11; Ex. H.  During the assessment, plaintiff scored

3    his pain at night as 10 on a scale of 1 to 10.  Id.  Nurse Palomino contacted Physician Assistant

4    ("PA") Todd who prescribed Tylenol #3.  Id.  Nurse Palomino also reassured plaintiff that his

5    biopsy was pending after PA Todd verified the appointment with the receiving and release nurse.

6    Id.  PA Todd wrote an order for plaintiff to follow up in the MD Line between June 30 and July

7    3, 3008.  Id.

8    On June 30, 2008, plaintiff's cell mate, Ronald Rivers, called "man-down" at 7:30

9    a.m. after plaintiff repeatedly complained of pain.  Alcala Dep. at 68-69.  In response, plaintiff

10   claims defendant Carrillo and several other officers arrived at plaintiff's cell where plaintiff was

11   lying in a fetal position on his bed.  Id. at 71-73.  Plaintiff alleges Carrillo accused plaintiff of

12   faking his illness.  Id. at 73-76.  Plaintiff also alleges Carrillo refused to allow medical staff to

13   carry plaintiff on a stretcher from his second floor cell to the bottom of the stairs where a cart

14   awaited to take plaintiff to the TTA.  Id.  Instead, plaintiff was forced to walk with the assistance

15   of two or three people "[m]aybe 25, 30 feet" from his cell to the top of the stairs and then down

16   "[m]aybe 15 steps" to the cart at the bottom of the steps.  Id.  Plaintiff estimates he walked for a

17   total of five to seven minutes.  Id. at 77.  He also claims that he was forced to wait a couple of

18   hours before being seen by a doctor in the TTA.  See id. at 80.

19   Plaintiff was seen in the TTA at 8:00 a.m. the morning of June 30, 2008 with

20   complaints of constipation for five days and an inability to eat for two days.  Naseer Decl., Ex.

21   G.  At 8:45 a.m., plaintiff was seen by Dr. Wesley Hashimoto, not a party to this action, who

22   diagnosed plaintiff with an enlarging abdominal mass and possible colon obstruction.  Id.

23   Plaintiff was sent by ambulance to SJGH Emergency Department.  Id.

24   Plaintiff remained at SJGH from June 30, 2008 to July 2, 2008.  Naseer Decl.,

25   ¶ 12.

26   /////

On his return from SJGH, plaintiff was placed in administrative segregation where he remained until July 11, 2008.  Alcala Dep. at 82-85.  None of the defendants were responsible for plaintiff's placement in administrative segregation.  Carrillo Decl., ¶ 8; Naseer Decl., ¶ 23; Palomino Decl. ¶ 18.

On July 5, 2008, plaintiff completed a seventh CDC 7362 Form.  Palomino Decl., ¶ 12; Ex. I.  Plaintiff requested a natural laxative to help with his constipation.  Id.

On July 8, 2008, plaintiff was seen by a doctor in the TTA.  Naseer Decl., Ex. J.  The doctor prescribed Lactulose, Milk of Magnesia and Tylenol #3, wrote an order for plaintiff to return to the MD Line in 1-2 weeks, to receive an extra sack lunch for 30 days, to enroll in the High Risk Clinic and to be referred to oncology ASAP.  Id.

On July 9, 2008, a triage nurse assessed plaintiff in response to his July 5, 2008 CDC 7362 Form.  Palomino Decl., ¶ 12; Ex. I.  Neither Nurse Palomino nor Dr. Naseer saw plaintiff in response to this request.

On July 9, 2008, plaintiff completed an eighth CDC 7362 Form.  Palomino Decl., ¶ 13; Ex. J.  Plaintiff requested to see the dietician to make changes to his diet.  Id.  Neither Nurse Palomino nor Dr. Naseer saw plaintiff in response to this request.

On July 11, 2008, plaintiff was seen in the TTA at 7:00 a.m. following an emergency response.  Palomino Decl., ¶ 14; Ex. K.  The TTA notes indicate that plaintiff was taken by emergency cart to TTA where he complained of severe abdominal pain.  Id., Ex. K.  Neither Nurse Palomino nor Dr. Naseer saw plaintiff in response to this emergency.

Plaintiff was admitted to SJGH on July 11, 2008 and was discharged on July 21, 2008.  Naseer Decl., Ex. L.  He was ultimately diagnosed with non-Hodgkins lymphoma stage IV.  Id.  Plaintiff began chemotherapy treatment on July 17, 2008.  Id.  Plaintiff's cancer is presently in remission.  Alcala Dep. at 15-16.

/////

/////

6

RELEVANT PROCEDURAL BACKGROUND

1

2          Plaintiff initiated this action on December 8, 2009 as a petition for writ of habeas

3   corpus.  See Doc. No. 1.  Plaintiff's petition was comprised of two claims: the instant claim and

4   a challenge to a disciplinary conviction and subsequent loss of good-time credits.  Because the

5   first claim concerned his conditions of confinement and the second claim concerned the fact or

6   duration of his confinement, the court converted the petition to a civil rights action, and plaintiff

7   was ordered to bring his challenge to the disciplinary conviction in a separate action pursuant to

8   28 U.S.C. § 2254.  See Doc. No. 10; Related Case 2:10-cv-3448-JFM.

9          On September 16, 2011, defendants filed a motion for summary judgment.

10  Ultimately, on June 20, 2012, the undersigned recommended that the September 16, 2011 motion

11  for summary judgment be granted.  See Doc. No. 72.  However, the June 20, 2012 findings and

12  recommendations were vacated pursuant to Woods v. Carey, 684 F.3d 934 (9th Cir. 2012) and

13  plaintiff was again informed of the requirements for opposing a motion for summary judgment.

14  See Doc. No. 80.  Defendants September 16, 2011 motion for summary judgment was denied

15  without prejudice and defendants were given thirty days to refile a motion for summary

16  judgment.  See id.

17         On August 23, 2012, defendants refiled their motion for summary judgment.  See

18  Doc. No. 81.  Defendants request judicial notice of the second amended complaint in their

19  motion.  Plaintiff filed his opposition on November 13, 2012.  See Doc. No. 89.  In his

20  opposition, plaintiff requests judicial notice of (1) the second amended complaint, (2) his

21  deposition, (3) various court orders in this case, (4) plaintiff's disputed issues of fact and

22  exhibits, (5) plaintiff's opposition to defendants' motion for summary judgment; and (6)

23  declarations attached to plaintiff's opposition to defendants' motion for summary judgment.

24  Defendants filed a reply on November 20, 2012.  See Doc. No. 90.  Defendants' reply also

25  included a request for judicial notice which included documents associated with James E. Daly,

26  an individual whose declaration was attached to plaintiff's opposition to the motion for summary

1  judgment as well as plaintiff's prior admissions to two facts to defendants' September 16, 2011

2  motion for summary judgment.  Plaintiff filed a sur-reply on December 17, 2012.  See Doc. No.

3  94.  Defendants filed objections to plaintiff's sur-reply on November 19, 2012 and requested that

4  the sur-reply not be considered.

5  SUMMARY JUDGMENT STANDARDS UNDER RULE 56

6  Summary judgment is appropriate when it is demonstrated that there exists "no

7  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

8  matter of law."  FED. R. CIV. P. 56(c).

9  Under summary judgment practice, the moving party

10  always bears the initial responsibility of informing the district
   court of the basis for its motion, and identifying those portions of

11  "the pleadings, depositions, answers to interrogatories, and
   admissions on file, together with the affidavits, if any," which it

12  believes demonstrate the absence of a genuine issue of material
   fact.

13

14  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)).  "[W]here the

15  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

16  judgment motion may properly be made in reliance solely on the 'pleadings, depositions,

17  answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be

18  entered, after adequate time for discovery and upon motion, against a party who fails to make a

19  showing sufficient to establish the existence of an element essential to that party's case, and on

20  which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of

21  proof concerning an essential element of the nonmoving party's case necessarily renders all

22  other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so

23  long as whatever is before the district court demonstrates that the standard for entry of summary

24  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

25  If the moving party meets its initial responsibility, the burden then shifts to the

26  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

8

1  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

2  establish the existence of this factual dispute, the opposing party may not rely upon the

3  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

4  form of affidavits, and/or admissible discovery material, in support of its contention that the

5  dispute exists.  See FED. R. CIV. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

6  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

7  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

8  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

9  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

10  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

11  1436 (9th Cir. 1987).

12        In the endeavor to establish the existence of a factual dispute, the opposing party

13  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

14  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

15  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

16  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

17  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e) advisory

18  committee's note on 1963 amendments).

19        In resolving the summary judgment motion, the court examines the pleadings,

20  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

21  any.  See FED. R. CIV. P. 56(c).  The evidence of the opposing party is to be believed.  See

22  Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed

23  before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

24  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

25  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

26  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

2 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

3 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

4 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

5       On November 30, 2010, the court advised plaintiff of the requirements for

6 opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

7 Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and

8 Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  Plaintiff was once again informed of the

9 requirements to oppose a motion pursuant to Rule 56 on August 20, 2012 by the court and by the

10 defendants on August 23, 2012.

11       DISCUSSION

12 I.    Defendants' Request to Strike Sur-Reply

13       Defendants request that plaintiff's sur-reply be stricken.  See Doc. No. 95.

14 Sur-replies concerning motions are generally not permitted, and plaintiff did not seek leave to

15 file a sur-reply.  See Local Rule 230(l).  Therefore, the sur-reply will not be considered and will

16 be struck.

17 II.    Requests for Judicial Notice

18       Both plaintiff and defendants have made several requests for judicial notice.

19 Judicial notice is governed by Federal Rule of Evidence 201, which governs only judicial notice

20 of adjudicative facts.  "A judicially noticed fact must be one not subject to reasonable dispute in

21 that it is either (1) generally known within the territorial jurisdiction of the trial court or (2)

22 capable of accurate and ready determination by resort to sources whose accuracy cannot

23 reasonably be questioned."  FED. R. EVID. 201.  In other words, "the fact must be one that only

24 an unreasonable person would insist on disputing."  United States v. Jones, 29 F.3d 1549, 1553

25 (11th Cir. 1994).  While federal courts may notice judicial records, the content of such records

26 and deposition testimony are not established facts that can be judicially notice.  See In re Oracle

1  Corp. Sec. Litig., 627 F.3d 376, 386 n. 1 (9th Cir. 2010); Newman v. San Joaquin Delta

2  Community College Dist., 272 F.R.D. 505, 516 (E.D. Cal. 2011).  However, a court can take

3  judicial notice of its own records.  See United States v. Wilson, 631 F.2d 118, 119 (9th Cir.

4  1980).

5           In their motion for summary judgment, defendants have requested that the court

6  take judicial notice of plaintiff's second amended complaint filed on June 22, 2010.  See Doc.

7  No. 81-7.  However, it is unnecessary to take judicial notice of documents already in the record.

8  See Aguirre v. Home Depot U.S.A., Inc., Civ. No. 10-0311, 2012 WL 3639074, at *7 (E.D. Cal.

9  Aug. 23, 2012) (citing Lew v. U.S. Bank Nat. Ass'n, No. C. 11-4546, 2012 WL 1029227, at *1

10  n. 1 (N.D. Cal. Mar. 26, 2012)).  Thus, this request will be denied.

11          Plaintiff requests that the court take judicial notice of (1) the second amended

12  complaint, (2) his deposition, (3) various court orders in this case, (4) plaintiff's disputed issues

13  of fact and exhibits, (5) plaintiff's opposition to defendants' motion for summary judgment; and

14  (6) declarations attached to plaintiff's opposition to defendants' motion for summary judgment.

15  This request will similarly be denied as most of these documents are already part of the record in

16  this case.  See id.  Additionally, with respect to plaintiff's deposition, the court notes that a

17  deposition transcript is not a proper matter for judicial notice.  See Nicewander v. MTC

18  Financial, Inc., Civ. No. 10-2141, 2012 WL 1185943, at *2 n. 2 (S.D. Cal. Apr. 8, 2012) (citing

19  Provencio v. Vazquez, 258 F.R.D. 626, 638 n. 4 (E.D. Cal. 2009)).

20          Finally, in their reply, defendants request that the court take judicial notice that

21  James E. Daly, an individual whose declaration is attached to plaintiff's opposition to the motion

22  for summary judgment, is currently incarcerated at Mule Creek State Prison and include public

23  documentation to that effect.  They also seek judicial notice that James E. Daly's physician and

24  surgeon license was revoked on February 24, 2006 and include public documentation to that

25  effect.  As these are matters of public record, judicial notice of these facts is proper.

26          Additionally, defendants request judicial notice of two facts (# 6 and # 53) that

1   plaintiff admitted in opposing defendants' prior motion for summary judgment that was denied

2   without prejudice.  Plaintiff's prior admissions to defendants' prior motion for summary

3   judgment are already part of the record in this case.  Therefore, judicial notice of the prior

4   admissions in this case will be denied.  See Aguirre, 2012 WL 3639074, at *7.

5          Accordingly, defendants' request for judicial notice as set forth in their reply is

6   denied except to the fact that James E. Daly is currently incarcerated at Mule Creek State Prison

7   and that his physician and surgeon license was revoked on February 24, 2006.

8   III.   Defendants' Motion for Summary Judgment

9          A.   Eighth Amendment Claims of Deliberate Indifference

10              1.   Dr. Sahir Naseer

11          In order to establish a violation of the Eighth Amendment based on alleged

12   inadequate medical care, an inmate must prove acts or omissions sufficiently harmful to

13   evidence deliberate indifference to serious medical needs.  Hudson v. McMillian, 503 U.S. 1, 5

14   (1992); Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A difference of medical opinion about

15   treatment, without more, does not amount to a deliberate indifference to serious medical needs.

16   See Sanchez, 891 F.2d at 242.  Mere indifference, medical malpractice, or negligence will not

17   support a cause of action under the Eighth Amendment.  See Broughton v. Cutter Lab., 622 F.2d

18   458, 460 (9th Cir. 1980).

19          In the instant case, plaintiff's Eighth Amendment claim is predicated, at bottom,

20   on the plaintiff's impression that Dr. Naseer should have sent him to an outside hospital

21   immediately upon becoming aware of the lump in plaintiff's abdomen.  Plaintiff, however, has

22   tendered no evidence that the medical judgment of Dr. Naseer was the product of deliberate

23   indifference to his condition.  To the contrary, the undisputed evidence shows that, based on

24   plaintiff's complaints, and following Dr. Naseer's examination of plaintiff, Dr. Naseer referred

25   plaintiff to SJSH for a CT scan, requested a number of laboratory tests and ordered a routine

26   surgery consultation following the CT scan.  Although plaintiff contends Dr. Naseer should have

12

1  done more, "a difference of medical opinion as to the need to pursue one course of treatment

2  over another [is] insufficient, as a matter of law, to establish deliberate indifference." Jackson v.

3  McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal quotation marks omitted).  Instead, the

4  plaintiff "must show that the course of treatment the doctors chose was medically unacceptable

5  under the circumstances, and that they chose this course in conscious disregard of an excessive

6  risk to [the] plaintiff's health."  Id. (internal citations omitted); see also Sanchez v. Vild, 891 F.2d

7  240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference

8  to [a prisoner's] serious medical needs."); see also Fleming v. Lefevere, 423 F. Supp. 2d 1064,

9  1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not

10  create a triable issue of fact because he has not shown that he has any medical training or

11  expertise upon which to base such an opinion.").  Plaintiff has failed to make such a showing.

12          For these reasons, defendant Dr. Naseer is entitled to summary judgment on

13  plaintiff's Eighth Amendment claim.

14                  2.      Nurse Aurelia Palomino

15          Plaintiff brings suit against Nurse Palomino on the ground that she was

16  deliberately indifferent to his serious medical needs when she refused to refer him to a doctor

17  after plaintiff's repeated requests for examination.  The record does not support plaintiff's claim.

18          Plaintiff first saw Nurse Palomino on May 20, 2008.  Following the nurse's

19  assessment of plaintiff, Nurse Palomino contacted Dr. Naseer regarding plaintiff's medical

20  condition.  Plaintiff acknowledges that Nurse Palomino deemed his condition "serious enough"

21  to contact Dr. Naseer.  See Alcala Dep. at 24.  There is no deliberate indifference on these facts.

22          Nurse Palomino next saw plaintiff on June 3, 2008 when she informed plaintiff

23  that he had a pending CT scan and that he was scheduled to see Dr. Naseer within the week.

24  Nurse Palomino clearly did not deny plaintiff the opportunity to see a doctor, as it is evident that

25  plaintiff was seen by Dr. Naseer two days later on June 5, 2008.  There is no deliberate

26  indifference on these facts.

1    Following her third assessment of plaintiff in response to his June 17, 2008 CDC

2  7362 Form, Nurse Palomino spoke to Dr. Hawkins regarding plaintiff's medical condition and

3  his request for a change in diet.  Plaintiff was thereafter scheduled for a follow-up appointment

4  in the MD Line and he received a change in diet.  Plaintiff admits that Nurse Palomino did

5  "nothing wrong" with respect to this assessment.  Alcala Dep. at 61.  Thus, there is no deliberate

6  indifference here.

7    Finally, in response to plaintiff's June 25, 2008 request for medication, Nurse

8  Palomino contacted  PA Todd, who ordered pain medication for plaintiff.  Plaintiff admits Nurse

9  Palomino did not err regarding this request.  Alcala Dep. at 65.  There is no deliberate

10  indifference here.

11    Because plaintiff has failed to submit any evidence that Nurse Palomino was

12  deliberately indifferent to his medical needs, Nurse Palomino is entitled to summary judgment

13  on plaintiff's Eighth Amendment claim.

14        3.    Correctional Officer R. Carrillo

15    Plaintiff lastly alleges that Carrillo violated his Eighth Amendment rights by

16  accusing plaintiff of faking his illness and thereafter refusing to allow plaintiff to be transported

17  on a stretcher after plaintiff went "man-down" on June 30, 2008.

18    It is true that delays in providing medical care may manifest deliberate

19  indifference.  See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  Such claims require proof of

20  two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's

21  response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991).  However, in

22  order to establish a claim of deliberate indifference arising from delay in providing care, a

23  plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th

24  Cir. 1994); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't,

25  865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d

26  404, 407 (9th Cir. 1985).  "A prisoner need not show his harm was substantial; however, such

14

1  would provide additional support for the inmate's claim that the defendant was deliberately

2  indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

3          Even drawing all reasonable inferences in favor of plaintiff, the court nonetheless

4  finds that summary judgment should be entered in favor of Carrillo.  Plaintiff has simply failed

5  to submit any evidence that would demonstrate deliberate indifference on Carrillo's part.

6  Plaintiff alleges that during the seven minutes that he was forced to walk 30 feet from his cell to

7  the top of the stairs and then 15 steps to the bottom of the stairs, Carrillo's actions contributed to

8  plaintiff's pain and suffering.  Although pain and suffering may be actionable under the Eighth

9  Amendment, McGuckin, 974 F.2d at 1060, the court cannot find that this seven minute period

10  constitutes a violation, particularly in light of plaintiff's failure to submit any evidence that the

11  delay exacerbated his pain or worsened his medical condition.  See Berry v. Bunnell, 39 F.3d

12  1056, 1057 (9th Cir. 1994)

13          At best, Carrillo can be accused of insensitive comments and an uncaring attitude,

14  yet insofar as plaintiff alleges Carrillo verbally abused and/or harassed plaintiff by accusing him

15  of faking an illness, this claim fails as a matter of law because verbal harassment does not

16  constitute a violation of the Eighth Amendment.  Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir.

17  1996).

18          B.    Conditions of Confinement

19          Plaintiff also raises claims challenging the decision to place plaintiff in

20  administrative segregation following his return from SJGH.  Plaintiff, however, readily admits

21  that none of the defendants were involved in that decision.  Accordingly, summary judgment

22  should be entered on this claim.

23          C.    Qualified Immunity

24          Because the court concluded above that plaintiff fails to raise a triable issue of

25  fact on his claims that his constitutional rights were violated, the court need not reach the issue

26  of qualified immunity.

1       Accordingly, IT IS HEREBY ORDERED that:

2       1.  Plaintiff's sur-reply to defendants' motion for summary judgment, Doc. No.
3  94, is struck.

4       2.  Defendants' requests for judicial notice as set forth in their motion for
5  summary judgment and their reply are denied except to regarding their request for judicial notice
6  that James E. Daly is currently incarcerated at Mule Creek State Prison and that his physician
7  and surgeon license was revoked on February 24, 2006.

8       3.  Plaintiff's requests for judicial notice as set forth in his opposition to the
9  motion for summary judgment are denied.

10      Furthermore, IT IS HEREBY RECOMMENDED that defendants' motion for
11  summary judgment be granted.

12      These findings and recommendations are submitted to the United States District
13  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen
14  days after being served with these findings and recommendations, any party may file written
15  objections with the court and serve a copy on all parties.  Such a document should be captioned
16  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
17  shall be served and filed within seven days after service of the objections.  The parties are
18  advised that failure to file objections within the specified time may waive the right to appeal the
19  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20  DATED: February 20, 2013.

UNITED STATES MAGISTRATE JUDGE

14
alca3407.msj(2)